# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JAMES HUFF,

    Petitioner,

vs.                                                              Civil No. 99-236 M/WWD

ROBERT PERRY, et al.,

    Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

    1. THIS MATTER comes before the Court upon Respondents' Motion to Dismiss, filed May 7, 1999 **[docket # 9-1]**. Petitioner ("Huff"), who is represented by counsel,[1] has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is currently incarcerated and confined pursuant to the judgment, sentence and commitment of the Third Judicial District Court of Dona Aña County for the crimes of two counts of criminal sexual contact ("CSC").

*Background*

    2. Petitioner had been acquainted with the victim's family for eleven or twelve years when he committed the two counts of CSC. The victim ("Victim") was thirty-years old at the time of the offenses but had the mental capacity of a twelve-year old. She agreed to go for a drive in Petitioner's pickup truck on October 18, 1994. While in the truck, Petitioner grabbed

---

[1] I note that Respondents sent a copy of the filing of the state court record directly to Petitioner, but the docket does not show that counsel for Petitioner has withdrawn from this case. (See docket entry for 1/6/2000).

and squeezed Victim's breasts underneath her clothing.[2] Victim moved as far away from Petitioner as possible in the truck, hit him with her elbow and told him to stop because he was hurting her. Petitioner then rubbed Victim's vaginal area, despite the fact that Victim asked him to stop and kept pushing his hand away. She was also crying and kept moving as close to the passenger door as possible to get out of his reach.

3. After the trip, Petitioner followed Victim into her home and into her bedroom. He grabbed her breasts under her clothing and squeezed them hard until they hurt. When Victim was sitting on her bed, Huff unzipped her pants and began touching her unclothed vagina, under the guise of rubbing her stomach, where her ulcer was causing her pain. Victim asked Petitioner to stop touching her there and tried to move his hand away several times, but each time Huff replaced his hand. Victim "got off her bed and left the room, crying and shaking."[3] The opinion was published at 125 N.M. 254 (Ct.App. 1998). References to the decision will be made as Exhibit I attached to Respondents' Answer. 125 N.M. at 257.

*Discussion*

4. Petitioner presents three grounds for relief:

(1) The convictions violated the Fifth Amendment prohibition against double jeopardy because he was tried after a declaration of a mistrial;

---

[2] The first count relates to Huff's conduct in the truck; the second relates to his conduct at her home. These facts are recited in the court of appeals opinion as well as in the victim's testimony which is presented as a portion of the record attached to the petition. The state court's account includes reference to other portions of the victim's testimony which are not included in Petitioner's exhibit, e.g., that the victim testified Huff squeezed her breasts so hard that she was unable to breathe and that she was so scared "that her entire body shook and she had difficulty breathing." 125 N.M. at 256.

[3] State v. Huff, 125 N.M. 254, 257 (Ct.App. 1998). References to the decision will be made as Exhibit I attached to Respondents' Answer.

2

(2) The convictions violated the Fifth and Fourteenth Amendments because an element of the crime, physical force, was not present; and

(3) The convictions violated the Fifth and Fourteenth Amendments because Petitioner was not present during several phases of the criminal proceeding.

Respondents contend that all three grounds are subject to summary dismissal because they have been raised, addressed and rejected on direct appeal. See State v. Huff, 125 N.M. 254 (Ct.App.), cert. denied, 125 N.M. 146 (1998).

5. For cases governed under the post-AEDPA habeas statutes, federal habeas courts must give great deference to state factual findings.[4] Factual findings from state court proceedings are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A federal court may grant habeas relief if, and only if, the "decision" resulting from that adjudication was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or involved an "unreasonable application of law," or was an "unreasonable determination of the facts in light of the evidence" presented at the state level. § 2254(d). The second subsection specifies the standard of review governing questions of fact and the first specifies distinct standards of review governing questions of law and mixed questions of law and fact. See Carter v. Johnson, 110 F.3d 1098, 1103 (5th Cir. 1997) (citations omitted).

**First Alleged Error - Double Jeopardy**

6. The State's expert, psychiatrist Dr. Flores, had diagnosed Victim with Post Traumatic Stress Disorder ("PTSD") resulting from sexual abuse of Victim that began when she was 14

---

[4] Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, tit.I, sec. 104 (to be codified at 28 U.S.C. §§ 2254(d),(e) (April 24, 1996)). AEDPA applies to cases filed after its effective date, regardless of when state court proceedings occurred. Wallace v. Ward, 191 F.3d 1235 (10th Cir. 1999).

3

years old. In a pretrial meeting with prosecutor and defense counsel, Dr. Flores made clear that his diagnosis was not based on the events that occurred in October 1994. In fact, Victim never reported these recent events to Dr. Flores when she sought treatment. Nevertheless, at trial, the prosecutor questioned Dr. Flores extensively about the PTSD diagnosis without revealing Victim's unrelated history of sexual abuse, despite frequent sustained objections and warnings from the bench to limit the questions to the most recent incidents of sexual contact involving Petitioner.

7. The trial court eventually granted Petitioner's motion for a mistrial based on the introduction of this unduly prejudicial expert testimony. The trial court denied Petitioner's motion to quash the second jury array and to dismiss the charges based on prosecutorial misconduct. At the second trial, Petitioner was convicted of both counts of CSC without the prejudicial expert testimony. He contends that the introduction of this unduly prejudicial expert testimony in the first trial constituted prosecutorial misconduct which should have barred retrial under the double jeopardy clause.

8. The Double Jeopardy Clause of the Fifth Amendment protects Respondents from repeated prosecutions or multiple punishments for the same offense. United States v. Dinitz, 424 U.S. 600, 606 (1976). In general, if a defendant requests a mistrial, he gives up his right to a verdict by the jury then empaneled, and double jeopardy does not bar his retrial. Id., cited in U.S. v. Doyle, 121 F.3d 1078, 1083 (7th Cir. 1997). However, both New Mexico law and federal law have carved out exceptions to the rule where double jeopardy bars retrial if certain prosecutorial misconduct has occurred.

9. The prosecutorial misconduct issue was presented on direct appeal. The state court

relied on State v. Breit, 122 N.M. 655, 930 P.2d 792 (1996) in making its findings. Under Breit, retrial is barred when (1) improper prosecutorial conduct is so unfairly prejudicial to the defendant that it cannot be cured by any means short of a mistrial; (2) the prosecutor knows or can be presumed to know that the conduct is improper and prejudicial; and (3) the prosecutor either (a) intends to provoke a mistrial, or (b) acts in willful disregard of the resulting mistrial, retrial, or reversal. The appeals court found that because the first prong of the Breit test was "dispositive in this case," i.e., any prejudice to the defendant could be cured by means other than a mistrial, the Breit test was not satisfied, and therefore, Petitioner's second trial did not violate his right to be free from double jeopardy.[5]

10. The state court of appeals acknowledged that the prosecutor "may not have intended to introduce inadmissible evidence." Ex. I at 12. Nevertheless, the court also noted that because Breit was not simply an intent-based test, double jeopardy under the Breit standard can bar retrial based on prosecutorial misconduct not intended to provoke a mistrial. Ex. I at 12.

11. Federal law regarding prosecutorial misconduct does not mirror the standard under Breit. Under Oregon v. Kennedy, 456 U.S. 667, 676 (1982), the Supreme Court expounded on a prosecutorial misconduct exception to the general rule that if a mistrial is declared at the defendant's request, double jeopardy does not bar reprosecution for the same offense.[6] Instead of

---

[5] The court then went on to analyze the case under the remaining prongs "in order to alert prosecutors to their obligations and limits under Breit." Ans., Ex. I at 7.

[6] The New Mexico Supreme Court in Breit decided not to adopt the approach announced in Kennedy in interpreting the state constitution. See State v. Lucero, 127 N.M. 672, 678, 986 P.2d 468, 473 (Ct.App.1999). The Court stated that the view adhered to in Kennedy "improvidently failed to weigh the effects of the misconduct of prosecutors who do not subjectively intend to provoke a mistrial." Id.

a three-prong test allowing for a presumption of both the knowledge that the prosecutorial conduct is improper and a willful disregard of its consequences, the federal standard is much more stringent, narrowing even further the exception that bars retrial under the Double Jeopardy Clause. Under Kennedy, a defendant alleging a double jeopardy violation based on prosecutorial misconduct must show actual intent.

12. Kennedy provides that if governmental misconduct was intended to "goad" the defendant into moving for a mistrial, double jeopardy does indeed bar reprosecution. Id. (circumstances under which a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial), cited in U.S. v. McAleer et al., 138 F.3d 852, 855 (10th Cir. 1998).

13. Thus, because the state court's factual findings were based specifically on Breit which does *not* require a showing of actual intent, habeas review of this issue necessarily involves an examination of the record to see whether the state court findings are reasonable under the federal standard which *does* require a showing of intent, and whether the state court's decision was an unreasonable application of that standard. See Kennedy at 675 (a standard that examines the intent of the prosecutor is a manageable standard to apply, calling for the court to make a finding of fact and inferring the existence or nonexistence of intent from objective facts and circumstances).

14. Based on a review of the tape-recorded portions of the first trial where Dr. Flores testifies, I find that the state court decision that Petitioner's double jeopardy rights were not

violated should be given deference and presumed to be correct. 12/20/95, T.4: 30-72.[7]

15. The prosecutor based her line of questioning to Dr. Flores based on State v. Alberico, 116 N.M. 156 (1991) which provides that expert opinion testimony regarding PTSD is admissible for establishing whether alleged victim exhibits symptoms that are consistent with rape or sexual abuse. The problem here was that Dr. Flores had seen Victim for her presenting symptoms of depression and had uncovered prior history of sexual abuse by a family member when she was fourteen years old, but had no knowledge about the recent episode involving Petitioner's abuse either from Victim's narrative or from his own inquiry into more recent events.

16. As the state court noted, Alberico was factually distinguishable because in that case there was a "causal link between the rape and the PTSD" since "there were no other facts in evidence that could have caused the PTSD." Ex. I at 8. In the present case, because Victim's PTSD "could be the result of years of sexual abuse, not the result of the recent sexual contacts by Defendant[,]" the testimony would tend to prove facts not material to the prosecution. Id. at 9.

17. At trial, defense counsel made initial objections relating to the need for foundational facts connecting Dr. Flores' testimony to the Petitioner's case. Before one of the bench conferences held on the matter, the prosecutor explained the basis for her questions:

> According to the Alberico case, I can't ask him anything about how it started. I can only ask him what her symptoms were and whether her symptoms are consistent with someone who suffered sexual abuse. I can't ask him to identify the perpetrator . . . " T.4: 40.8 - 41.0.

18. The trial judge sustained the objection, stating that Dr. Flores could testify as to facts

---

[7] "T" (Tape) citations to the state record proper are to a Sony Model BM-88, with approximately 91 counters per tape side.

7

"consistent with the claim" and instructed the prosecutor to develop the "history" so as to lay a foundation for Dr. Flores' testimony regarding this case. T.4: 49.6. The court of appeals opinion recognized that Alberico precluded the prosecutor from asking about actual causes of PTSD but allowed her to ask if Victim's symptoms are consistent with someone who has suffered sexual abuse. Ex. I at 10. However, almost any questions allowed under Alberico would be irrelevant in this case because of the prior sexual abuse by someone other than Petitioner.

19. What followed were the prosecutor's efforts to narrow the questioning in order to stay within the parameters defined at the bench conferences. She asked Dr. Flores why Victim was referred to him and inquired into the details of Victim's sexual abuse. T.4: 53.3- 55. It became evident at this point that Dr. Flores's opinion was based on facts and evidence concerning the abuse Victim suffered when she was a teenager and prior to the abuse by the Petitioner.

20. The prosecutor asked Dr. Flores whether Victim's symptoms are consistent with those of someone who has been sexually abused. Ruling on objections of relevancy and improper foundation, the trial court again instructed the prosecutor to "limit it to this specific occasion." T4: 67.7. However, because Dr. Flores was not aware of recent sexual incidents involving the Petitioner, he was unable to frame an opinion in the context of that specific claim, notwithstanding the trial court's rulings on defense counsel's objections.

21. Because the prosecutor continued to question Dr. Flores about his diagnosis knowing that the diagnosis was based on information concerning abuse that probably did not involve the Petitioner and because she had been warned to limit questions to recent incidents of sexual contact, the state court made findings that she could be *presumed* to know that her conduct was improper and prejudicial under the rules of evidence and *presumed* to be aware of

the potential mistrial.[8]

22. The prosecutor's conduct and line of questioning following the bench conferences suggest that she was caught in a dilemma: attempting to lay a foundation for Dr. Flores' testimony by limiting her questions to the case involving the Petitioner while at the same time refraining from asking about specific causes of Victim's PTSD which were precluded under Alberico. At the same time, these efforts were futile because the expert had no knowledge of recent sexual abuse involving the Petitioner.

23. Based on the trial record, I find that although the prosecutor's persistence in pursuing this line of questioning could be construed as a presumed awareness of improper and prejudicial conduct, she did not intend to "goad" the defense into moving for a mistrial -- which is required in order for double jeopardy to have barred the second prosecution. See Kennedy at 676 ("Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion. . .does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause").[9]

24. Accordingly, I find that the state court decision that Petitioner's second trial did not

---

[8] Here, the state court focused on the last two prongs of the Breit test, but made no finding that the prosecutor actually *knew* or *intended* her conduct to result in a request for a mistrial.

[9] I note that the state court decided this issue on the first prong of the Breit test, i.e., on the basis that a mistrial may not have been necessary in this case. The court pointed out that defense counsel could have proceeded in several ways in order to prevent the admission of the prejudicial testimony or to "mitigate the damage done by such testimony once admitted." Ex. I at 12-13. Because defense counsel knew about the "faulty basis" of Dr. Flores' diagnosis, defense counsel could have filed a motion in limine prior to trial, cross-examined the expert during trial, offered his own expert in rebuttal, or moved to strike the testimony and request a cautionary instruction. None of these were done. Id.

9

violate Petitioner's double jeopardy rights based on prosecutorial misconduct should be presumed to be correct since it is not inconsistent with findings made based on clearly established federal law. Relief should be denied on this ground.

**Second Alleged Error - Element of Physical Force**

25. Petitioner contends that the charge of criminal sexual contact should be dismissed based on the absence of physical force. In this case, the jury was instructed on the elements of Criminal Sexual Contact (N.M.S.A. 1978 § 30-9-12(A)), which includes "force" as one of the elements, whether charged as a misdemeanor or a felony; and the definition of "force" by statute as "the use of physical force or physical violence." N.M.S.A. § 30-9-10(A)(1).

26. Petitioner concedes that these instructions were properly submitted to the jury, and that physical force is indeed an element in the offenses for which he was charged. He does not contend that other instructions should have been added. Rather, he argues under a sufficiency of the evidence theory that Victim's testimony did not support a finding on that element by the jury.

27. Victim testified at length to specific details about the incident, including that Petitioner had grabbed her breasts and squeezed them until they were painful and uncomfortable, both in the car and in the bedroom and that he had unbuttoned her pants and touched her "private parts." T.3, T.4: 1-20. Petitioner offers a conflicting version of the incident, which includes a denial of the events that transpired in the bedroom, and the fact that he removed his hands from Victim's breasts when asked to.

28. The state court examined this issue and found that the jury was entitled to disregard Petitioner's version of the facts and that a jury could reasonably determine that Petitioner used force and that the "use of physical force is clear under both counts." Ex. I at 5. The court also

noted that any discrepancy regarding the amount of force that was used, or physical or verbal resistance of the victim, is irrelevant under the CSC statute except insofar as the force that was used was sufficient to negate consent. Ex. I at 5.

29. In its findings on this claim, the state court relied on a standard which tracks federal law in that it looked to see whether any rational jury could have found each element of the crime to be established beyond a reasonable doubt. See State v. Garcia, 114 N.M. 269, 274 (1992). Under federal standards, the pertinent question is whether a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government." See United States v. Mains, 33 F.3d 1222, 1227 (10th Cir. 1994); Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); In re Winship, 397 U.S. 358, 362 (proof of a criminal charge beyond a reasonable doubt is constitutionally required).[10]

30. Because Petitioner essentially challenges the weight given by the jury to the evidence in the record, his claim fails. See Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir. 1998) (citations omitted) (court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "accept the jury's resolution of the evidence as long as it is within the bounds of reason"). The Petitioner offers no facts which can be considered to be "clear and convincing" to rebut the jury's factual findings. See 28 U.S.C. § 2254(e)(1).

31. I do not find the state court's determination of the facts on this issue to be

---

[10] The state standard requires that inferences be made "in favor of the verdict," State v. Sutphin, 107 N.M. 126, 131 (1988), whereas under the federal standard, the view taken is that which is "most favorable to the Government," United States v. Pearson, 798 F.2d 385, 387 (10th Cir. 1986).

11

unreasonable in light of the evidence from the record on which the state court relied in making its findings. Therefore, relief should be denied on this ground as well.

**Third Alleged Error - Absence from Jury Impaneling**

32. Petitioner last alleges that his due process rights were violated because he was not present during parts of the jury impaneling process. Petitioner bases this alleged error on Rule 5-612 N.M.R.A. which requires the presence of a defendant "at every stage of the trial including the impaneling of the jury." However, he contends that Rule 5-612 grants him a right to be present during the computerized process of random selection of the jury and that his absence from this part of the jury selection violates his due process rights. See <u>Attachmt to Pet</u>.[11]

33. The state court found that the case upon which Petitioner relied, <u>State v. Garcia</u>, 95 N.M. 246, 249 (1980), which holds that a defendant has a right to be present when challenges to jurors are made, was not helpful to his claim. The court interpreted Rule 5-612 to mean that a defendant's presence was not required under the statute, either expressly or impliedly, "at the computerized selection of the jury panel from which the jury will eventually be selected." <u>Ex. I at 15</u>.[12] The court further found that a defendant's presence would not impact the ministerial process of disqualifying jurors from the pool on statutory grounds, nor provide any "meaningful insight or aid" to defense counsel. <u>Ex. I at 14-15</u>.

34. The court of appeals also noted that Huff "made no argument, and produced no evidence, that he was prejudiced in any way by the jury in his trial, or that his jury panel was

---

[11] Petitioner cites to several New Mexico statutes which govern the computerized process of random jury selection (e.g., NMSA § 38-5-2, § 38-5-11, § 38-5-13B, C).

[12] See <u>Huff</u>, 125 N.M. at 261.

unfair." Id. at 15. The court concluded that Petitioner's rights were not violated by his absence when the clerk of court culled disqualified or exempted members from the jury pool prior to voir dire examination and that the selection of his jury panel was not unfair.

35. Similarly, Petitioner offers no such argument or evidence in his federal petition. This ground should be dismissed for several reasons. First, because the state court's decision was not an unreasonable application of federal law regarding an individual's due process rights, it is presumed to be correct.

36. Second, insofar as Petitioner is alleging errors in the interpretation of a state statute, the claim is not cognizable under federal habeas review. See Bond v. Oklahoma, 546 F.2d 1369, 1377 (10th Cir. 1976)(interpretation of the State statute and its applicability to the facts were questions for the State Court and present no federal constitutional question for a habeas case); Shafer v. Stratton, 906 F.2d 506, 510 (10th Cir. 1990) (claims concerned solely with matters of state law fail to state a claim cognizable under 28 U.S.C. § 2254).

37. Third, the claim fails on its own merits because Petitioner's absence during the computerized process of random jury selection does not in any way offend notions of due process or otherwise render the trial fundamentally unfair. See Moore v. Gibson, 195 F.3d 1152 (10th Cir. 1999). Accordingly, relief should be denied on this last ground as well.

**Recommendation**

I recommend that Respondents' Motion to Dismiss **[docket # 9-1]** be GRANTED; that Petitioner's application for Writ of Habeas Corpus be DENIED and that this cause be dismissed with prejudice.

Within ten days after a party is served with a copy of these proposed findings and

recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE